IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ROSA L. CARDONA PEREZ,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO. 11-1891 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

    Plaintiff Rosa L. Cardona Pérez (hereafter plaintiff "Cardona") filed this action seeking judicial review of the final decision of the defendant, the Commissioner of Social Security (hereafter "Commissioner"), denying the application for a period of disability and ensuing disability benefits. (Docket No. 1). Plaintiff Cardona submits the court should set aside the administrative determination denying disability for the finding that plaintiff Cardona could perform other alternate work through the testimony of a vocational expert was based on inaccurate hypothetical questions and, thus, should not constitute substantial evidence in support of the decision. Plaintiff Cardona also claims the failure to rely on the opinion of her treating physician was an error for by not giving to such evidence appropriate weight or to explain the reasons why it was not so considered, thus lacking substantial evidence to support the denial.[1]

---

[1] U.S.C. Sec. 405(g) provides for judicial review of the final decision of the Commissioner.
"… [t]he court shall have power to enter, upon the pleadings and transcript
of the record, a judgment without remanding the cause for rehearing". Section 205(g).

On February 24, 2012, the Commissioner answered the Complaint and filed a copy of the administrative record. (Docket Nos. 10 and 11). On June 28, 2012[1], plaintiff's legal representative Atty. Salvador Medina de La Cruz filed a memorandum of law. (Docket No. 20). On September 14, 2012, the Commissioner filed his memorandum. (Docket No. 21).

The Court referred the case to this Magistrate Judge for all further proceedings as an implied consent after the parties were granted an opportunity to indicate their positions as to the referral to a Magistrate Judge.[2] Thereafter, the parties filed their respective memoranda after seeking and obtaining extensions of time and leave to file excess pages memorandum before this Magistrate Judge. (Docket Nos. 12, 13, 16 and 18). The consent to proceed before a United States Magistrate Judge was thereafter received.[3] (Docket No. 22). Title 28, United States Code, Section 636(b)(1)(A), (c)(1) and (c)(2); Fed.R.Civil P. 73(a).

Upon examination of the pleadings filed, this Magistrate Judge discusses below the pending motions and the appropriate disposition of this action.

## BACKGROUND

On July 25, 2006, plaintiff Cardona filed her application for a period of disability and entitlement to disability benefits claiming she became disabled by September 30, 2004 because of herniated disc at C4-C5, bulging disc at L4-L5 and L5-S1, osteoarthritis and

---

[2] See In re Sheridan, 362 F.3d 96 (1st Cir. 2004) (where the parties' actions appear to speak as clearly as words, consent may be implied) (citing In re G.S.F. Corp., 938 F.2d 1467 (1st Cir. 1991); see also Roell v. Withrow, 538 U.S. 580, 591, 123 S.Ct. 1696 (2003) (consent to proceed before a Magistrate Judge can be inferred from a party's conduct during litigation but notice of the right to refuse the magistrate judge is a prerequisite to any inference of consent.).

[3] The government has provided consent to proceed before a Magistrate Judge in all Social Security cases.

major depression. Plaintiff Cardona's application was denied initially and, upon reconsideration, for which reason the requested administrative hearing was held. The Administrative Law Judge (hereafter the "ALJ"), after considering the testimony of a vocational expert, found plaintiff Cardona not under disability upon determining she was still capable of performing work which existed in significant numbers in the national economy. The decision was affirmed by the Appeals Council.

Plaintiff Cardona, who remains insured for disability purposes up to September 30, 2008, was thirty-five years old at the time of alleged disability, attended two years of college, and worked as cashier and as care giver. By the time she was last employed by September 30, 2004, plaintiff Cardona suffered an automobile accident when her vehicle was rear-ended which thereafter caused her cervical and back pain. Upon receiving therapy and treatment because of the accident, plaintiff Cardona began suffering from frequent migraine headaches, dizzy spells, and nausea. While undergoing cervical epidural block for her neck pain and a diagnosed bulging disc at C4-C5, plaintiff suffered in July 7, 2005 a perforated dural sac that resulted in leakage of the spinal fluid and a blood patch was placed to stop the leakage. The condition resulted in pain and limitation of movement of her arms and neck. Thereafter, plaintiff developed a mental condition and received initially a diagnosis of post traumatic stress disorder (hereafer "PTSD") by August 15, 2005. She continued receiving psychiatric treatment, resulting in a diagnosis of major depressive disorder and motivation disorder due to her physical limitations.

The ALJ, after considering the vocational expert's testimony, issued an opinion denying plaintiff Cardona's disability claims finding that, although she could not perform any of her past relevant work as cashier or care giver, there were jobs available within the sedentary level of exertion and which considering her age, education and past relevant experience, and through the testimony of the vocational expert, existed in significant numbers in the national economy. Thus, the ALJ concluded plaintiff Cardona was not under disability.

**ADMINISTRATIVE AND PROCEDURAL HISTORY**

Plaintiff Cardona waived to be present at the administrative hearing held on September 24, 2009. The presiding ALJ then determined that: 1) plaintiff Cardona last met the insured status requirements of the Social Security Act on September 30, 2008, that is, the date she is considered to be last insured; (2) plaintiff Cardona had not engaged in substantial activity since the date of alleged disability and through the date of last insured she suffered from severe impairments, to wit, mild carpal tunnel syndrome, bulging disc at C4-C5 level, bulging disc at L4-L5 and L5-S1 levels and severe major depressive disorder. (Docket No. 10, Transcript, p. 15).

The ALJ discussed the medical evidence of record insofar as plaintiff Cardona's medical conditions. By September 2004, plaintiff suffered an automobile accident and received emergency treatment at the San German Metropolitan Hospital. No fractures were found on X-ray studies although she complained of neck pain. (Id., Transcript p. 15, Exhibit 1F). Plaintiff continued treatment through the Compensation Administration for Auto Accident (hereafter "ACAA") and received physical therapy and medication.

The ALJ further found that a CT-Scan of December 1, 2004 showed plaintiff Cardona had bulging disc in the lumbar spine at L4-L5 and L5-S1 levels. An electromyogram of the lower extremities showed normal nerve conduction velocity. She was referred to Dr. Roberto Cummings for lumbar epidural blocks. A CT-Scan of the cervical spine dated April 22, 2005 showed bulge disc at C4-C5 without disc herniation. Several epidural blocks were done. An upper extremities electromyogram dated June 2, 2005 showed mild bilateral carpal tunnel syndrome, without evidence of cervical radiculopathy.

A blood patch was obtained during a cervical block by Dr. Cummings on July 7, 2005. A visit to the Bella Vista Hospital on July 10, 2005 resulted from a possible cerebro spinal fluid leak in the occipital region due to the perforation of the dural sac during the epidural block. This visit refers to symptoms of dizziness, headaches, decreased arm movement and stiff neck. Upon discharge, there was a diagnosis of cervical radiculopathy. Still, the ALJ determined a magnetic resonance study of August 10, 2005 revealed only muscular spasm. (Docket No. 10, Transcript p. 16, Exhibits 2F, 3F, 4F and 5F).

The ALJ referred to notes by treating physician Dr. Roberto Almodóvar indicating there was cervical herniated disc, osteoarthritis and major depression. Dr. Almodóvar also diagnosed the presence of spinal fluid leak at the occipital region. The ALJ indicated the reported signs and findings through 2008 insured status were essentially the same as the ones from the Bella Vista Hospital and the ACAA. Thus, Dr. Almodóvar's statements of

significant limitations were considered refuted by his own findings and the whole record. (*Id.*, p. 16).[4]

On September 28, 2006, Dr. Samuel Méndez, a neurologist, reported the patient as being cooperative, alert, fully oriented and with adequate memory. There were findings of cervical and lumbar paraspinal muscles tenderness but not significant. (*Id.*).

Insofar as the mental condition, the ALJ referred to psychiatric treatment at Centro de Salud Conductual del Oeste (hereafter "CSCO") with a diagnosis of severe major depressive disorder, recurrent, without psychotic features. By 2006, Dr. Ronand Malavé from CSCO reported Cardona's understanding, concentration, persistence, social interaction and adaptation were moderately to markedly limited.

The ALJ still considered the medical evidence showed plaintiff Cardona expressed she was feeling and sleeping better with medication, without side effects. By August of 2007, the patient had good eye contact, was cooperative, calmed, with normal speech and appropriate affect. She was also coherent, relevant and logic, without perceptual disturbances. Mood was depressed with fair insight.

The next treatment was the following year, by February of 2008, stating the patient's symptoms were exacerbated for being without her medications. (*Id.*; Exhibit 11F). The ALJ opined that Dr. Malavé's conclusion as to plaintiff Cardona being extremely limited in her mental residual functional assessment was not supported by signs, progress notes at the CSCO nor the medical evidence in the whole record. (Docket No. 11, Transcript p. 17).

---

[4] The ALJ refers to there being no signs compatible with significant pathology related to the cerebro spinal fluid leak. (*Id.*).

On October 6, 2006, Dr. Alberto Rodríguez, a consultative psychiatrist saw plaintiff Cardona. During the evaluation the patient was apprehensive, depressed, with psychomotor retardation. Her thought process was coherent, logical and relevant; attention and concentration were diminished and her remote, recent and immediate memory was adequate. She was oriented in the three spheres. (*Id.*, p. 17, Exhibit 7F). On January 16, 2007, Dr. Idalia Pedroza (internist and non-examining physician from the state Disability Determination Program) opined plaintiff Cardona could perform medium work demand.

Likewise, Dr. Ramón Nevares opined she had no restrictions as to activities of daily living and maintaining social functioning. Dr. Nevares concluded the patient had a mood disorder due to medical conditions. (*Id.*, p. 17). These consultative assessments were adopted by Dr. Gilberto Fragoso, internist, and Dr. Luis Umpierre, psychiatrist.

The ALJ concluded plaintiff Cardona was limited to sedentary type of work with the ability to perform simple repetitive tasks, not requiring contact with the public and occasional contact with co-workers and supervisors up to the last insured date of September 30, 2008. (*Id.*). The ALJ found plaintiff Cardona not under disability upon the existence of jobs that she could still perform. The ALJ's decision was affirmed by the Appeals Council.

**THE ALJ'S DECISION AND THE APPEALS COUNCIL**

The ALJ applied in his administrative process the evaluation process mandated by law, insofar as concluding that plaintiff Cardona: (1) had met the non-disability requirements for a period of disability and disability insurance benefits and is insured for benefits through September 30, 2008; (2) had not engaged in substantial gainful activity since the alleged onset date of disability; (3) allegations of severe impairments or

combination thereof had more than a minimal affect on her ability to perform basic work-related activities, constituting severe impairments; (4) plaintiff did not have an impairment or combination that meets or equals the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) upon consideration of the entire record plaintiff Cardona, although unable to perform her past relevant jobs, had the residual functional capacity to perform sedentary type of work. Considering plaintiff's residual functional capacities for sedentary work, as well as her age, and education, the ALJ determined, through the testimony of a vocational expert, there were jobs that existed in significant numbers in the national economy that plaintiff Cardona could perform. (Docket No. 11, Transcript, p. 20).

The ALJ also considered plaintiff's allegations of pain as substantiated by the medical evidence. The ALJ found Cardona is able to take care of her children, take them to school, wash dishes and clothes and hang them, watch television and hear music daily. She drives a vehicle for short distances and goes grocery shopping. The ALJ concluded plaintiff Cardona's exertional limitations were not due to herniated disc, but rather bulging disc. Thus, plaintiff retained the residual functional capacity to perform the full range of sedentary work. However, she had additional limitations, which required a determination on how these limitations eroded the unskilled sedentary occupational base. Considering the factors deemed relevant and submitted to the vocational expert, there were jobs available, such as classifier, inspector and ticketer which existed within plaintiff Cardona's residual functional capacity.

Rosa L. Cardona-Pérez v. Commissioner of S.S.
Opinion and Order
Civil No. 11-1891 (CVR)
Page No. 9

**LEGAL ANALYSIS**

The Court's review is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. *See* Manso-Pizarro v. Secretary of Health and Human Services, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986); Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).

To establish entitlement to disability benefits, the burden is on the claimant to prove that she is disabled within the meaning of the Social Security Act. *See* Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987). It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is or not disabled. 20 C.F.R. §§ 404.1520; *see* <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987); <u>Goodermote v. Sec. of Health & Human Servs.</u>, 690 F.2d 5, 6-7 (1st Cir. 1982).

Through step one the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. §§ 404.1520(b). If not, the decision-maker proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. *See* §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past. If the claimant is able to perform his/her previous work, he/she is not disabled. §§ 404.1520(e). If it is determined that the claimant cannot perform this work, then the fifth and final step of the process demands a determination on whether claimant is able to perform other work in the

national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform other work. §§ 404.1520(f). The ALJ in the instant case examined and analyzed plaintiff's case following the steps above described.

The claimant has the burden, under steps one through four, of proving that he/she cannot return to his/her former employment because of the alleged disability. Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991). In the present case, plaintiff Cardona was found by the ALJ unable to perform her previous past relevant work and, thus, continued from the examination after said step four consideration. By determining the residual functional capacity for sedentary type of work, limited to unskilled, simple and repetitive, with limited interaction with supervisors and other employees, and through the testimony of a vocational expert at the administrative hearing, the ALJ concluded there were jobs available in the national economy within plaintiff's residual functional capacity. The ALJ opined plaintiff Cardona was not under disability and the Appeals Council thereafter affirmed.

Counsel for plaintiff, Atty. Medina De-La-Cruz, argues the ALJ failed to provide valid reasons to disregard the opinion of the treating physician, as well as in presenting the hypothetical questions to the vocational expert at the administrative hearing, resulting in a lack of substantial support for the ALJ's determination. (Docket No. 20). In regards with the vocational expert, plaintiff's counsel submits the ALJ failed to present all of plaintiff's limitations which resulted from ignoring vital medical evidence. *See* Lyzotte v. Secretary of Health & Human Servs., 645 F.2d 31, 35 (1st Cir. 1981) (if a vocational expert's testimony

is to have any probative value, the hypothetical question posed to the expert must contain all the relevant facts).

The Court of Appeals for the First Circuit has indicated an ALJ is "not required to recite every piece of evidence that favored appellant." *See* Stein v. Sullivan, 966 F.2d 317, 319 (7th Cir. 1992) (noting that the level of articulation required is not precise). *See* 20 C.F.R. § 404.1527(d) ("We will always give good reason in our notice of determination or decision for the weight we give your treating source's opinion); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

The Commissioner, through the ALJ, is authorized to give greater weight to testimony and reports of medical experts commissioned by the administrative agency than to testimony and reports of other medical experts in determining whether a claimant is disabled. Similarly, the ALJ is entitled to reject a treating physician's conclusions that a claimant is totally disabled and accept contradictory medical evidence in the record. Keating v. Secretary of Health & Human Servs., 848 F.2d 271 (1st Cir. 1988). That more weight is given to those reports of non-primary treating physician is not an error of the ALJ. *See* Barrientos v. Secretary of Health & Human Servs., 820 F.2d 1, 2-3 (1st Cir. 1987).

A review of the record shows the treating physician Dr. Roberto Almodóvar referred to symptoms of severe pain and restlessness. (Docket No. 11, Transcript, p. 467). Positive signs included joint warmth and deformity, joint instability, reduced grip, sensory changes,

tenderness, crepitus, redness, swelling, muscle weakness and abnormal gait. Pain was localized on the cervical area, back, arms, lower back and legs. During treatment from ACAA, Dr. Malavé's report indicated plaintiff Cardona suffered from adhedonia, motivation problems, mood swings and sleep disorders. Concentration was limited. In addition to a major depressive disorder, she had a motivation disorder due to physical limitations. (*Id.*, pp. 465-466). Psychiatric treatment at CSCO presented a diagnosis of severe major depression, without psychotic features. Plaintiff Cardona was provided with medication including Prozac 40 mg and Klonopin 5 mg. (*Id.*, p. 454-457).

The ALJ also made reference to the testimony of the vocational expert Dr. Héctor Puig insofar as plaintiff Cardona being able to perform sedentary type of work, indicating there were sedentary jobs, such as classifier, inspector and ticketer that Cardona could perform. Plaintiff's legal representation presented to the vocational expert the hypothesis of additional limitations imposed in the movement of the arms, a matter which was omitted by the ALJ's hypothetical question at the administrative hearing. Plaintiff's counsel then argues in the memorandum that, if such additional hypothesis would have been considered, as testified by the vocational expert to counsel's questions, a person requires bilateral functions and is then unable to perform the occupations of classifier, inspector and ticketer. As such, the absence of hand movement and constant hand and eye coordination, which counsel argued plaintiff Cardona lacks, would result in she being out of the market and considered disabled. (*Id.*, p. 27).

Courts give deference to the ALJ's interpretation of the medical record and notice that, although an ALJ is not at liberty to ignore medical evidence or substitute his own views

for uncontroverted medical opinion, upon the existence of conflicts in the medical record from the report and sources, it is still not for the Court to resolve same. *See* Nguyen v. Chater, 172 F.3d 31 (1st Cir. 1999); Lizotte v. Secretary of Health & Human Servs., 654 F.2d 127 (1st Cir. 1981) (the resolutions of conflicts in the evidence and the determination of the ultimate question of disability is for him [the ALJ], not for the doctors or for the courts). *See also* Rodríguez v. Secretary of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Insofar as plaintiff Cardona, the ALJ considered the treating physician's assessment but determined it was not consonant with the medical evidence in the record as a whole as to significant and/or marked limitations nor by the physician's own medical notes. Although there is a mention of cervical radiculopathy, the electromyogram study only showed muscular spasm. Dr. Almodóvar referred to possible cerebro spinal fluid leak but there were no signs compatible with significant pathology being detected.[5]

Furthermore, there is no controversy in the medical evidence that plaintiff Cardona does not suffer from disc herniation,[6] rather disc bulging, which is a condition that part of the disk is bulging from the tough outer layer of cartilage and is usually part of the normal aging process that could be observed on MRIs of people in almost every age group.[7] Hence,

---

[5] Depending on the cause of the leak, many cases go away on their own after a few days. Headaches may be treated with pain relievers and fluid. A procedure may be done to block the hole that may be leaking fluid, called a blood patch, because a blood clot can be used to seal the leak and this generally makes symptoms go away. Rarely is surgery needed to repair a tear in the dura and to stop the headache.

[6] Disc herniation results when a crack in the tough outer layer of cartilage allows some of the softer inner cartilage to protrude out of the disc. Bulging disc are more common and while herniated disc are more likely to case pain, many people have bulging disc that cause no pain.

[7] See attached herein document entitled "Attachment A" as required by the Judicial Conference as approved in the March 2009 session for "all internet materials cited in final opinions be considered for preservation" and that [e]ach judge … should retain the discretion to decide whether the specific cited resource should be captured and preserved." As such, the site's pages were downloaded and filed as an attachment to the judicial opinion in the CM/ECF system insofar

the hypothetical questions to the vocational expert were based on the ALJ's determination as to credible evidence of record that incorporated those impairments and associated limitations found by the ALJ to support the residual functional capacity assessment for sedentary work. Under such hypothetical question, the ALJ was entitled to rely on the testimony of the vocational expert.

To review the final decision of the Commissioner courts must determine if the evidence of record meets the substantial evidence criteria. Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion". Richardson v. Perales, 402 U.S. 389 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938). The findings of the Commissioner as to any fact are conclusive, if supported by the above stated substantial evidence.[8] The court would set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error. See Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez, 647 F.2d at 222.

The ALJ's determination of residual functional capacity is based on giving more weight to the consultative evaluations, instead of the treating physicians, but such is not beyond the scope of the ALJ's proper assessments. Additionally, the record also presents plaintiff Cardona takes care of house chores, of activities of daily living such as preparing meals, washing clothes and hanging them, taking children to school, driving, watching

---

as herniated vs. bulging disc and CSF leak references. (Footnotes 5 and 6).

    [8] Falu v. Secretary of Health & Human Servs., 703 F. 2d 24 (1st Cir. 1983).

television and listening to the radio. Hence, Cardona was not significantly limited in activities of daily living either by her exertional or her non-exertional conditions.

In view of the foregoing, this Magistrate Judge opines the decision of the Commissioner is supported by substantial evidence in the record as whole, insofar as plaintiff's mental impairment and combination with her non-exertional limitations imposed by pain and by her physical conditions, for which reason it should be AFFIRMED.

## CONCLUSION

For the reasons above discussed, this United States Magistrate Judge, having carefully perused the record and considered whether there was substantial evidence in support of the decision rendered by the Commissioner concludes the Commissioner's decision is supported by substantial evidence. As such, the Commissioner's decision is AFFIRMED.

Judgment to be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 17th day of October of 2012.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE